**E-FILED**
Monday, 20 February, 2006  01:24:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | | |
|---|---|---|
| ROBERT S. GILMORE, STEVE GERARD, DEVON WILSON and GEORGE COPPLE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06-cv-3010 |
| JAMES A. CARLOCK, | ) ) ) | |
| Defendant. | ) | |

## MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(7), 17(a) and 28 U.S.C. §1359

Defendant, James A. Carlock, by his attorney, moves pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), 17(a), and 28 U.S.C. §1359 to dismiss all Counts of the Complaint and in support states has follows:

1. Plaintiffs have filed a four-count Complaint against Defendant. In Count I, Plaintiffs ask for a Declaratory Judgment. In Count II, Plaintiffs seek an Injunction. In Count III, Plaintiffs assert a claim for Intentional Interference with Business Expectancy and in Count IV, they allege Breach of the Implied Covenant of Quiet Enjoyment.

2. In terms of jurisdiction, Plaintiffs assert that the Court has 28 U.S.C. § 1332 jurisdiction because they are citizens of foreign states, Defendant is a citizen of Illinois, and that the amount in controversy exceeds $75,000.00.

3. Although they fail to attach copies of the applicable lease, all four of the counts in the complaint allege that Defendant entered into a gas lease with an

Illinois LLC, Allied Energy, LLC. (Comp. para. 9). In fact, Defendant entered in to two lease agreements with Allied Energy. LLC. (Leases attached as Exhibit A & B). The leases in question are central to each count of Plaintiffs' Complaint.

4. Although the leases are central to the Complaint, Plaintiffs do not allege that they actually entered into a lease with Defendant. Instead, they claim that they entered into a joint venture agreement with an entity called Double Eagle Energy, Inc. (Compl. para. 2). Plaintiffs, however, do not attach a copy of the joint venture agreement nor do they disclose Double Eagle Energy, Inc's place of incorporation or its principal place of business.

5. Plaintiffs further claim that Allied Energy, LLC is an authorized agent of Double Eagle Energy, Inc. (Compl. para. 8). They, however, fail to allege any facts to support said assertion or explain how a corporation can be an agent for another corporation.

6. As made clear in Exhibits A & B, Defendant never contracted with Double Eagle Energy, Inc. and both leases specifically state that the rights of the lessee may not be assigned without the express written consent of lessor. Defendant, the lessor, never gave such written consent. In fact, prior to being served with the Complaint Defendant had never even heard of the Plaintiffs. (Exhibit C).

7. Accordingly, Defendant respectfully submits that the Complaint must be dismissed. Specifically, it must be dismissed because the Court does not have jurisdiction. The Court does not have jurisdiction for four reasons. First, jurisdiction is lacking because Plaintiffs do not have standing to sue Defendant.

Second, jurisdiction is lacking because Plaintiffs violated 28 U.S.C. §1359.  Third,

jurisdiction is lacking because Plaintiffs are not the real party in interest.  Last,

even if Plaintiffs somehow do have standing, did not violate 28 U.S.C. §1359, and

are the real parties in interest,  Allied Energy, LLC, an Illinois Limited Liability

Company, is an indispensable party needed for just adjudication of the dispute

and with Allied Energy, LLC in the case, the Court does not have 28 U.S.C. §1332

jurisdiction.

5.  Accompanying this Motion is a Memorandum of Law that more fully sets

forth the reasons why this Motion should be allowed.

WHEREFORE, DefendantsCarlock prays that the Complaint be dismissed

with prejudice and Plaintiffs ordered to pay Defendant's costs.

JAMES A. CARLOCK, Defendant,

By: /s/ Douglas J. Quivey
Douglas J. Quivey Bar Number: 6225888
Attorney for Defendant
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South 7th Street, P.O. Box 399
Springfield, Illinois 62705
Tel:  (217) 544-9823 Fax: (217) 544-9826
E-Mail: doug@lprpc.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2006 I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Elliott M. Hedin
Attorney Number: 06273932
Scott C. Helmholz
Attorney Number: 6186488
Brown, Hay & Stephens, LLP
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705
ehedin@bhslaw.com.com
shelmholz@bhslaw.com
Attorneys for Plaintiffs

By: <u>/s/ Douglas J. Quivey</u>
Douglas J. Quivey Bar Number: 6225888
Attorney for Defendant
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South 7th Street
P.O. Box 399
Springfield, Illinois 62705
Tel: (217) 544-9823 Fax: (217) 544-9826
E-Mail: doug@lprpc.com

**E-FILED**
Monday, 20 February, 2006 01:27:51 PM
No. 200402943 Book 704 Page 2943
Adams County, State of Illinois
Clerk, U.S. District Court, ILCD
R E C O R D E D
Mar 16, 2004 9:58 AM Fees $28.00

Larry D. Ehmen, County Recorder

## NATURAL GAS LEASE          Mays & Walden & Anastas

AGREEMENT, Made and entered into the 13th day of February, 2004 by and between James Carlock of 429 S. 18th St., Quincy, IL 62301, hereinafter called "lessor," (Whether one or more) and Allied Energy, L.L.C., an Illinois Limited Liability Company, hereinafter called "lessee":

WITNESSETH: That the said lessor, for and in consideration of Ten Dollars ($10.00) cash in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on part of lessee to be paid, kept and performed, has granted, demised, leased, and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for gas and laying of pipelines, to produce, save and take care of said products, all that certain tract of land situated in the County of Adams, State of Illinois, described as follows, to wit:

The Southwest Quarter of the Northeast Quarter of Section Twenty-seven (27) in Township Three (3) South of the Base Line, in Range Five (5) West of the Fourth Principal Meridian, situated in the County of Adams and the State of Illinois.

IT IS AGREED, that this lease shall remain in force for a term of one year from this date, and as long thereafter as natural gas is produced and commercially sold from said land by lessee. Prior to placing pipelines, lessee shall consult with lessor to determine a mutually agreeable location for such placement. The Rights-of- Way granted for pipeline hereunder shall not exceed ten (10) feet in width, allowing five (5) feet on either side of the pipeline to work on and maintain the pipeline. The portion of the property actually used as provided herein by lessee for well structures, other necessary appurtenances and right-of-ways shall be surveyed, staked, platted, and legally described by a licensed surveyor at lessee's expense. Lessee shall be furnished a certified copy of such survey in recordable form at no expense to lessor. All pipelines constructed by lessee as provided herein shall be buried and maintained at a minimum depth of three (3) feet below grade except any portion of the pipeline shall be buried and maintained at a depth of four (4) feet below grade under the deepest part of all ditches and waterways. When lessee excavates pits for the installation of any pipeline or facility allowed herein, lessee shall cause the excavated topsoil to be stockpiled. As soon as reasonably possible after completion of such excavation work, lessee shall return the stockpiled topsoil to the same approximate location from which it had originally been removed.

1

Once pipelines are in place, Rights-of-Way for said pipeline shall remain in place for so long as natural gas is produced and commercially sold from said land by lessee. In the event that the production and commercial sale of gas from the land of lessor ceases, the Rights-of-Way granted hereunder shall continue for so long as the payments from lessee to lessor provided in this agreement are made in a timely manner and lessee is not in default under any of the terms of this agreement. Upon termination, lessor may cause the Quitclaim Deed hereinafter described or other instrument evidencing lessee's surrender of the Property and Rights-of-Way to be released by the escrow agent and duly recorded with the Adams County, Illinois Recorder of Deeds. Lessee hereby consents to the recordation of such instrument evidencing Lessee's surrender of all interest in the Property upon lessor furnishing to the escrow agent, an Affidavit or other proof of lessee's default in performance of any obligation imposed upon lessee pursuant to this agreement or proof of non-production.

In consideration of the premises the said lessee covenants and agrees:

1st. To pay lessor 12.5 percent of the gas production proceeds, payable monthly on or before the first day of each month, for the gas from each well where gas is found. For the purposes of this agreement "gas production proceeds" shall be determined by multiplying the quantity of gas produced from each well times the Inside F.E.R.C.'s Gas Market Report Monthly Index – for Panhandle Eastern Pipe Line Co. (Main Line) adjusted by deducting from such sum the amount of $0.28 per mcf paid by lessee to S.C.O.P.E, Ameren CIPS or others for transportation, compression, and dehydration. Lessee shall install, at lessee's expense, meters on all producing wells. All meters shall be tested, at least annually, at lessee's expense, by certified personnel or a certified testing facility. All well meter readings and records, including test records, shall be maintained by lessee for a minimum period of one year from the date the test was performed or production metered. Copies of such records shall be provided by lessee to lessor upon request.

2nd Lessor shall receive, free of cost, 200 mcf of gas per year per well. When requested by Lessor, Lessee shall install, without cost to lessor, a tap in the pipeline for the purpose of providing natural gas service to the Lessor. Lessor shall make such request to lessee for the installation of a tap prior to the completion of the construction of the portion of the pipeline that runs through the property of Lessor. Lessee shall further provide lessor, at the actual cost of materials incurred by lessee not to exceed the sum of Five Hundred Dollars ($500.00), all valves, fittings, drips, regulator, meter, filter, dessication system, and odorization system necessary to complete such natural gas service to lessor. Lessor agrees to install the required gas system from the service side of the gas meter and assume all maintenance of said system. Lessor shall be billed monthly or for such longer term at the discretion of lessee for all gas used at the aforementioned lessor's tap in excess of 200 mcf of gas per year per well. Lessor shall be billed at a rate equal to the price received by lessee for such gas minus 28 cents per mcf. Lessee shall install, at lessee's expense, a meter to measure lessor's gas usage. Such meter shall be tested, at least annually, at lessee's expense, by certified personnel or a certified testing facility. All well meter readings and records, including test records, shall be maintained by lessee for a minimum period of one year from the date the test was performed or usage metered. Copies of such records shall be provided by lessee to lessor upon request. Lessee will make an effort to provide natural gas to the aforementioned tap on a continuous basis; however lessee cannot guarantee 100% deliverability. It is therefore the responsibility of the lessor to

maintain a back-up system.

3rd  In the event a well is completed and natural gas is produced and commercially sold from said well on said land during the first year of this lease, lessee shall guarantee payment to lessor a minimum monthly payment commencing January 1, 2005, of at least One Hundred and No/100 Dollars ($100.00) for each month the lease remains in effect. The minimum guaranteed monthly rent payments from lessee to lessor shall be increased each year by ten percent (10%) over the minimum monthly guaranteed payment from the previous year with such increases to take effect January 1st of each year that the lease remains in effect.

4th   The lessee shall pay lessor any damages which might arise as a result of lessee's activities conducted on the property of lessor. In the event the parties cannot mutually agree on the amount of damages, they shall be ascertained and determined by three disinterested persons, one thereof to be appointed by the lessor, one by the lessee and the third by the two so appointed, and the award of said three persons shall be final and conclusive subject to the provisions of this agreement. Damages that lessee shall be responsible to pay lessor include, but are not limited to, the following:

A.     Crops, pasture or hay with such damage to be determined by multiplying the average harvested yield per acre of the Property not damaged, displaced or otherwise affected by the activities of lessee by the total acreage of displaced cultivated crops, pasture or hay. The price per unit of the displaced cultivated crops shall be determined by the market price at harvest. Compensation shall be paid within fourteen (14) days after lessee receives from lessor documentation stating the average yield, displaced acreage, market price per unit and total compensation payable to lessor. In the event that the parties cannot mutually agree upon a fair amount for damages to crops, pasture or hay, the amount of such damages shall be fixed at Four Hundred Dollars ($400.0) per acre damaged.

B.     If Lessor is a party to a Conservation Reserve Program ("CRP") contract with the U.S. Department of Agriculture pursuant to 7 C.F.R. Part 1410, lessee shall reimburse lessor for (i) all annual rental payments, or portion thereof, lessor would have received from the U.S. Department of Agriculture but for the activities of lessee on the property and (b) the penalties and interest, if any (including for past payments received by lessor that must be repaid by lessor, assessed by the U.S. Department of Agriculture as a result of the lessee's activities on the property.

C.     Upon completion of construction, all property disturbed by lessee, and not required for lessee's continued activities, shall be restored to a condition reasonably similar to its original condition. Reclamation shall include, as reasonably required, restoration of CRP acreage, removal of compaction, leveling, terracing, mulching and other reasonably necessary steps to prevent soil erosion, to ensure the establishment of suitable and reasonable agricultural conditions. In all matters of conservation, restoration and reclamation required of lessee hereunder, either the lessor or lessee may refer the matter to the Soil and Water Conservation District of Adams County, Illinois. The Soil and Water Conservation District's determination of the reasonable and necessary measures to be taken to restore the property shall be binding on all parties to this agreement.

3

D.    Damages to buildings, drain tiles, roadways, fences or loss of use of the property caused by the exercise of any of the rights herein granted to lessee.

If no well is completed and natural gas, produced and commercially sold from said well on said land on or before the 1st day of January, 2005, this lease shall terminate as to both parties.

Upon execution of this lease, lessee shall execute a Quitclaim Deed conveying all of lessee's rights and title to the property to lessor. Such Quitclaim deed shall be delivered to Mays, Walden & Anastas, attorneys, as escrow agent. Upon lessor furnishing an Affidavit or other proof of termination of this lease agreement to the escrow agent,   the parties stipulate and agree that the escrow agent, in the sole discretion of the escrow agent, may release such Quitclaim Deed to lessor for the purpose of allowing such Quitclaim Deed to be recorded with the Adams County Recorder of Deeds.  The parties to this contract agree to hold said escrow agent harmless against any and all attorney fees, court costs, and other expenses incurred by said escrow agent in the event said escrow agent is joined in any suit at law or in equity by reason of being escrow agent under this contract.

The lessor and lessee expressly agree lessee shall have no right to use the lessor's property for ingress, egress, or for any reason or purpose whatsoever in regard to the property, or natural gas or any other material mined or produced from property now owned or acquired in the future by Donald O. Owens, Donald W. Owens or their heirs successors or assigns. Any violation of this provision will automatically terminate all of the lessee's rights granted under this lease agreement including, but not limited to all right-of-way rights.

Lessee shall have a grace period of ten (10) days after written notice from lessor to make any payment required of it hereunder prior to being in default. In the event that lessee fails to make any payment required of it hereunder before the termination of such grace period, this lease shall be terminated and declared null and void.

This agreement does not grant the lessee any mineral rights on the property other than the right to mine for natural gas as expressly described herein.

Lessee shall carry, at its own expense, liability insurance on said premises with lessor included in said policy or policies of insurance as named assured or as additional assured, (as the case may be), said insurance to be in the amount of not less than One Million Dollars ($1,000,000.00) for personal injuries, death and property damage.  Said policies of insurance or certificates of insurance evidencing same shall be furnished to lessor and kept in full force and effect during the existence of this contract.

If said lessor owns a less interest in the above described land than the entire undivided fee simple estate therein, then the royalties herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee.

4

Lessee shall have the right to use, free of cost, water and gas produced on said land for lessee's operations thereon except water from the wells of lessor.

Upon termination of the Lease, lessee and lessee's successors and assigns shall, as soon as practicable thereafter, but in no event later than one year after such termination, unless otherwise mutually agreed upon, remove any and all equipment or structures installed by lessee, in a manner which minimizes injury to the land and reclaim any disturbed soil surface with suitable flora and restore the soil surface to as close as reasonably practicable to its original condition. All Property disturbed by lessee, shall be restored to a condition and forage density reasonably similar to its original condition and forage density, consistent with the uses permitted by this Agreement.

The parties expressly agree that in the event that this agreement is terminated the above-mentioned Quitclaim Deed may be released by the escrow agent and recorded with the Recorder of Deeds and that the ownership of the portion of the pipeline and any equipment associated therewith that remains upon the property shall automatically revert to lessor.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of lessor.

In the event that Lessee is not in default under any term or condition of this agreement, lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

Lessee shall reclaim location within one year of completion of drilling and completion operations.

Lessee shall reclaim location within one year of completion of plugging operations.

Lessee shall be responsible for maintenance of any of Lessor's roads used for ingress or egress.

The rights of lessee may not be assigned without the express written consent of lessor. Such consent shall not unreasonably be withheld. An assignment of this lease approved in writing by lessor shall not, unless the lessor expressly agrees in writing, relieve and discharge lessee of any obligations hereunder.

The rights of lessor hereunder may be assigned in whole or in part and the provisions hereof shall extend to the lessor's heirs, executors, administrators, successors, and assigns, but no change or division in ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require the installation of separate measuring tanks or instruments. No such change or division in the ownership of the land or royalties shall be binding upon lessee for any purpose until such person acquiring any interest has furnished lessee with the instrument or instruments, or certified copies thereof, constituting his chain of title from the original lessor.  Lessor agrees that the lessee shall have the right at any time to redeem for lessor, by

payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder hereof, and the undersigned lessors, for themselves, their heirs, successors, and assigns, hereby surrender and release all rights of dower and homestead in the premises herein described insofar as said right of dower and homestead may in any way affect the purpose for which this lease is made as recited herein.

If lessee or lessor violate any provisions of this lease by its action or failure to act, then at any time after such violation, lessor or lessee, as the case may be, is entitled to an injunction or restraining order or appropriate court remedy. If either party seeks appropriate judicial action to enforce any terms or conditions of this lease, or any provisions of equity or law which apply to this lease or apply to the relationship of lessor and lessee, and that party obtains the appropriate relief requested of the court, then the other party shall pay the complete cost of obtaining relief, including court costs, attorney's fees and expert fees.

All express or implied covenants of this lease shall be subject to all Federal and State Laws and to all executive orders, rules or regulations of State and Federal authorities, and this lease shall not be terminated, in whole or in part, nor lessee held liable for any failure to perform there under if such failure is due to or is the result of any such law, order, rule or regulation.

IN WITNESS WHEREOF WE SIGN, the date first above written

JAMES A. CARLOCK, Lessor

ALLIED ENERGY, L.L.C., Lessee

By: _____
Its: _____

Attest: _____
Its: _____

6

No. 200402943 Book 704 Page 2943

ACKNOWLEDGEMENT

State of Illinois          )
                           ) SS.
County of Adams            )

I, _Terrence J. Anastas_ , A Notary Public, in and for said County, in the State aforesaid, do hereby certify that James A. Carlock personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and SEAL, this _13th_ day of _____, 2004

OFFICIAL SEAL
TERRENCE J. ANASTAS
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES: 04-07-07

_____
Notary Public

State of _Illinois_          )
                             ) SS.
County of _Adams_            )

I, the undersigned, a Notary Public in and for said County in the State aforesaid, DO HEREBY CERTIFY THAT _Ann B. Gibson_ , personally known to me to be the ____ President of the Limited Liability Company who is the Lessee, and _Ann B. Gibson_ , personally known to me to be the _____ Secretary of said company, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as such President and Secretary, they signed and delivered the said instrument as President and Secretary of said company, and caused the corporate seal of said company to be affixed thereto, pursuant to authority, given by the Board of Directors of said company, as their free and voluntary act, and as the free and voluntary act and deed of said company, for the uses and purposes therein set forth.

Given under my hand and Notarial Seal this _13th_ day of _February_ , 2004.

_____
Notary Public

OFFICIAL SEAL
TERRENCE J ANASTAS
NOTARY PUBLIC · STATE OF ILLINOIS
MY COMMISSION EXPIRES: 04-07-07

PIN 12-0-0271-000-00

7

**E-FILED**
Monday, 20 February, 2006  01:28:17 PM
Clerk, U.S. District Court, ILCD

No. 200409090 Book 704 Page 9090
Adams County, State of Illinois
R E C O R D E D
Jul 27, 2004 11:52 AM  Fees $28.00

Larry D. Ehmen, County Recorder

Mays & Walden & Anastas

## NATURAL GAS LEASE

AGREEMENT, Made and entered into the _12th_ day of _July_, 2004, by and between James Carlock of 429 S. 18th St., Quincy, IL 62301, hereinafter called "lessor," (Whether one or more)  and Allied Energy. L.L.C., an Illinois Limited Liability Company, hereinafter called "lessee":

WITNESSETH: That the said lessor, for and in consideration of Ten Dollars ($10.00) cash in hand paid, and other good and valuable consideration,  the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on part of lessee to be paid, kept and performed, has granted, demised, leased, and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for  gas and laying of pipelines, to produce, save and take care of said products, all that certain tract of land situated in the County of Adams, State of Illinois, described as follows, to wit:

> Northeast Quarter of the Southeast Quarter of Section Twenty-seven (27), Township Three (3) South of the Base Line, in Range Five (5) West of the Fourth Principal Meridian, Adams County, Illinois;

IT IS AGREED, that this lease shall remain in force for a term of one year from this date, and as long thereafter as natural gas is produced and commercially sold from said land by lessee. Prior to placing pipelines, lessee shall consult with lessor to determine a mutually agreeable location for such placement.  The Rights-of- Way granted for pipeline hereunder shall not exceed ten (10) feet in width, allowing five (5) feet on either side of the pipeline to work on and maintain the pipeline. The portion of the property actually used as provided herein by lessee for well structures, other necessary appurtenances and right-of-ways shall be surveyed, staked, platted, and legally described by a licensed surveyor at lessee's expense.  Lessee shall be furnished a certified copy of such survey in recordable form at no expense to lessor.    All pipelines constructed by lessee as provided herein shall be buried and maintained at a minimum depth of three (3) feet below grade except any portion of the pipeline shall be buried and maintained at a depth of four (4) feet below grade under the deepest part of all ditches and waterways.  When lessee excavates pits for the installation of any pipeline or facility allowed herein, lessee shall cause the excavated topsoil to be stockpiled.  As soon as reasonably possible after completion of such excavation work, lessee shall return the stockpiled topsoil to the same approximate location from which it had originally been removed.

In the event that the production and commercial sale of gas from the land of lessor ceases, the Rights-of-Way granted hereunder shall terminate.  Upon termination, lessor may

cause the Quitclaim Deed hereinafter described or other instrument evidencing lessee's surrender of the Property and Rights-of-Way to be released by the escrow agent and duly recorded with the Adams County, Illinois Recorder of Deeds. Lessee hereby consents to the recordation of such instrument evidencing Lessee's surrender of all interest in the Property upon lessor furnishing to the escrow agent, an Affidavit or other proof of lessee's default in performance of any obligation imposed upon lessee pursuant to this agreement or proof of non-production.

In consideration of the premises the said lessee covenants and agrees:

1st.  To pay lessor 12.5 percent of the gas production proceeds, payable monthly on or before the first day of each month, for the gas from each well where gas is found. For the purposes of this agreement "gas production proceeds" shall be determined by multiplying the quantity of gas produced from each well times the Inside F.E.R.C.'s Gas Market Report Monthly Index -- for Panhandle Eastern Pipe Line Co. (Main Line) adjusted by deducting from such sum the amount of $0.27 per mcf paid by lessee to S.C.O.P.E, Ameren CIPS or others    for transportation, compression, and dehydration. Lessee shall install, at lessee's expense, meters on all producing wells. All meters shall be tested, at least annually, at lessee's expense, by certified personnel or a certified testing facility.  All well meter readings and records, including test records, shall be maintained by lessee for a  minimum period of one year from the date the test was performed or production metered.  Copies of such records shall be provided by lessee to lessor upon request.

2nd  Lessor shall receive, free of cost, 200 mcf of gas per year per well. When requested by Lessor, Lessee shall install, without cost to lessor, a tap in the pipeline for the purpose of providing natural gas service to the Lessor. Lessor shall make such request to lessee for the installation of a tap prior to the completion of the construction of the portion of the pipeline that runs through the property of Lessor.  Lessee shall further provide lessor, at the actual cost of materials   incurred by lessee not to exceed the sum of Five Hundred Dollars ($500.00), all valves, fittings, drips, regulator, meter, filter, dessication system, and odorization system necessary to complete such natural gas service to lessor.   Lessor agrees to install the required gas system from the service side of the gas meter and assume all maintenance of said system. Lessor shall be billed monthly or for such longer term at the discretion of lessee for all gas used at the aforementioned lessor's tap in excess of 200 mcf of gas per year per well.  Lessor shall  be billed at a rate equal to the price received by lessee for such gas minus 28 cents per mcf.  Lessee shall install, at lessee's expense, a meter to measure lessor's gas usage.  Such meter shall be tested, at least annually, at lessee's expense, by certified personnel or a certified testing facility. All well meter readings and records, including test records, shall be maintained by lessee for a minimum period of one year from the date the test was performed or usage metered.  Copies of such records shall be provided by lessee to lessor upon request.  Lessee will make an effort to provide natural gas to the aforementioned tap on a continuous basis; however lessee cannot guarantee 100% deliverability.  It is therefore the responsibility of the lessor to maintain a back-up system.

3rd  In the event a well is completed and natural gas is  produced and commercially sold from said well on said land during the first year of this lease, lessee shall guarantee payment to lessor a minimum monthly payment commencing January 1, 2005, of at least One Hundred and No/100 Dollars ($100.00) for each month  the lease remains in effect.    The  minimum

guaranteed monthly rent payments from lessee to lessor shall be increased each year by ten percent (10%) over the minimum monthly guaranteed payment from the previous year with such increases to take effect January 1st of each year that the lease remains in effect.

4th    The lessee shall pay lessor any damages which might arise as a result of lessee's activities conducted on the property of lessor. In the event the parties cannot mutually agree on the amount of damages, they shall be ascertained and determined by three disinterested persons, one thereof to be appointed by the lessor, one by the lessee and the third by the two so appointed, and the award of said three persons shall be final and conclusive subject to the provisions of this agreement.   Damages that lessee shall be responsible to pay lessor include, but are not limited to, the following:

A.    Crops, pasture or hay with such damage to be determined by multiplying the average harvested yield  per acre of the Property not damaged, displaced or otherwise affected by the activities of lessee  by the total acreage of displaced cultivated crops, pasture or hay. The price per unit of the displaced cultivated crops shall be determined by the market price at harvest.   Compensation shall be paid within fourteen (14) days after lessee receives from lessor documentation stating the average yield, displaced acreage, market price per unit and total compensation payable to lessor. In the event that the parties cannot mutually agree upon a fair amount for damages to crops, pasture or hay, the amount of such damages shall be fixed at Four Hundred Dollars ($400.0) per acre damaged.

B.    If Lessor is a party to a Conservation Reserve Program ("CRP") contract with the U.S. Department of Agriculture pursuant to 7 C.F.R. Part 1410,  lessee shall reimburse lessor for (i) all annual rental payments, or portion thereof, lessor would have received from the U.S. Department of Agriculture but for the activities of lessee on the property and (b) the penalties and interest, if any (including for past payments received by lessor that must be repaid by lessor, assessed by the U.S. Department of Agriculture as a result of the lessee's  activities on the property.

C.    Upon completion of construction, all property disturbed by lessee, and not required for lessee's continued activities, shall be restored to a condition reasonably similar to its original condition.   Reclamation shall include, as reasonably required, restoration of CRP acreage, r emoval o f c ompaction, l eveling, t erracing, m ulching a nd o ther r easonably n ecessary steps to prevent soil erosion, to ensure the establishment of suitable and reasonable agricultural conditions.   In all matters of conservation, restoration and reclamation required of lessee hereunder, either the lessor or lessee  may refer the matter to the Soil and Water Conservation District of Adams County, Illinois. The Soil and Water Conservation District's determination of the reasonable and necessary measures to be taken to restore the property shall be binding on all parties to this agreement.

D.    Damages to buildings, drain tiles, roadways, fences or loss of use of the property caused by  the exercise of any of the rights herein granted to lessee.

If no well is completed and natural gas, produced and commercially sold from said well on said land on or before the 1st day of January, 2005, this lease shall terminate as to both parties.

No. 200409090 Book 704 Page 9090

Upon execution of this lease, lessee shall execute a Quitclaim Deed conveying all of lessee's rights and title to the property to lessor. Such Quitclaim deed shall be delivered to Mays, Walden & Anastas, attorneys, as escrow agent. Upon lessor furnishing an Affidavit or other proof of termination of this lease agreement to the escrow agent, the parties stipulate and agree that the escrow agent, in the sole discretion of the escrow agent, may release such Quitclaim Deed to lessor for the purpose of allowing such Quitclaim Deed to be recorded with the Adams County Recorder of Deeds. The parties to this contract agree to hold said escrow agent harmless against any and all attorney fees. court costs, and other expenses incurred by said escrow agent in the event said escrow agent is joined in any suit at law or in equity by reason of being escrow agent under this contract.

The lessor and lessee expressly agree lessee shall have no right to use the lessor's property for ingress, egress, or for any reason or purpose whatsoever in regard to the property, or natural gas or any other material mined or produced from property now owned or acquired in the future by Donald O. Owens, Donald W. Owens or their heirs successors or assigns. Any violation of this provision will automatically terminate all of the lessee's rights granted under this lease agreement including, but not limited to all right-of-way rights.

Lessee shall have a grace period of ten (10) days after written notice from lessor to make any payment required of it hereunder prior to being in default. In the event that lessee fails to make any payment required of it hereunder before the termination of such grace period, this lease shall be terminated and declared null and void.

This agreement does not grant the lessee any mineral rights on the property other than the right to mine for natural gas as expressly described herein.

Lessee shall carry, at its own expense. liability insurance on said premises with lessor included in said policy or policies of insurance as named assured or as additional assured, (as the case may be), said insurance to be in the amount of not less than One Million Dollars ($1,000,000.00) for personal injuries, death and property damage. Said policies of insurance or certificates of insurance evidencing same shall be furnished to lessor and kept in full force and effect during the existence of this contract.

If said lessor owns a less interest in the above described land than the entire undivided fee simple estate therein, then the royalties herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost. water and gas produced on said land for lessee's operations thereon except water from the wells of lessor.

Upon termination of the Lease, lessee and lessee's successors and assigns shall, as soon as practicable thereafter, but in no event later than one year after such termination, unless otherwise mutually agreed upon, remove any and all equipment or structures installed by lessee, in a manner which minimizes injury to the land and reclaim any disturbed soil surface with suitable flora and restore the soil surface to as close as reasonably practicable to its original condition. All Property disturbed by lessee, shall be restored to a condition and forage density reasonably similar to its original condition and forage density, consistent with the uses permitted by this Agreement.

Page 4

The parties expressly agree that in the event that this agreement is terminated the above-mentioned Quitclaim Deed may be released by the escrow agent and recorded with the Recorder of Deeds and that the ownership of the portion of the pipeline and any equipment associated therewith that remains upon the property shall automatically revert to lessor.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of lessor.

In the event that Lessee is not in default under any term or condition of this agreement, lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

Lessee shall reclaim location within one year of completion of drilling and completion operations.

Lessee shall reclaim location within one year of completion of plugging operations.

Lessee shall be responsible for maintenance of any of Lessor's roads used for ingress or egress.

The rights of lessee may not be assigned without the express written consent of lessor. Such consent shall not unreasonably be withheld. An assignment of this lease approved in writing by lessor shall not, unless the lessor expressly agrees in writing, relieve and discharge lessee of any obligations hereunder.

The rights of lessor hereunder may be assigned in whole or in part and the provisions hereof shall extend to the lessor's heirs, executors, administrators, successors, and assigns, but no change or division in ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require the installation of separate measuring tanks or instruments. No such change or division in the ownership of the land or royalties shall be binding upon lessee for any purpose until such person acquiring any interest has furnished lessee with the instrument or instruments, or certified copies thereof, constituting his chain of title from the original lessor. Lessor agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder hereof, and the undersigned lessors, for themselves, their heirs, successors, and assigns, hereby surrender and release all rights of dower and homestead in the premises herein described insofar as said right of dower and homestead may in any way affect the purpose for which this lease is made as recited herein.

If lessee or lessor violate any provisions of this lease by its action or failure to act, then at any time after such violation, lessor or lessee, as the case may be, is entitled to an injunction or restraining order or appropriate court remedy. If either party seeks appropriate judicial action to enforce any terms or conditions of this lease, or any provisions of equity or law which apply to this lease or apply to the relationship of lessor and lessee, and that party obtains the appropriate

No. 200409090 Book 704 Page 9090

relief requested of the court, then the other party shall pay the complete cost of obtaining relief, including court costs, attorney's fees and expert fees.

All express or implied covenants of this lease shall be subject to all Federal and State Laws and to all executive orders, rules or regulations of State and Federal authorities, and this lease shall not be terminated, in whole or in part, nor lessee held liable for any failure to perform there under if such failure is due to or is the result of any such law, order, rule or regulation.

IN WITNESS WHEREOF WE SIGN, the date first above written

_James A Carlock_
JAMES A. CARLOCK, Lessor

ALLIED ENERGY, L.L.C., Lessee

By: _Alean B. Gibson_
Its: _member_

Attest: _____
Its: _____

## ACKNOWLEDGEMENT

State of Illinois        )
                         ) SS.
County of Adams          )

I, _Terrence J. Anastas_ A Notary Public, in and for said County, in the State aforesaid, do hereby certify that James A. Carlock personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and SEAL, this _1st_ day of _July_, 2004.

_Tmj Gr_
Notary Public

> OFFICIAL SEAL
> TERRENCE J ANASTAS
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES: 04-07-07

tate of _Illinois_ )
County of _White_ ) SS.
                  )

    I, the undersigned, a Notary Public in and for said County in the State aforesaid, DO HEREBY CERTIFY THAT _Dean B. Gibbs_ personally known to me to be the _memb_ President of the Limited Liability Company who is the Lessee, and _____, personally known to me to be the _____ Secretary of said company, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as such President and Secretary, they signed and delivered the said instrument as President and Secretary of said company, and caused the corporate seal of said company to be affixed thereto, pursuant to authority, given by the Board of Directors of said company, as their free and voluntary act, and as the free and voluntary act and deed of said company, for the uses and purposes therein set forth.

    Given under my hand and Notarial Seal this _12th_ day of _July_, 2004.

_PIN 12-0-0273-000.00_

_Sharron K Rock_
Notary Public

> OFFICIAL SEAL
> SHARRON K. ROCK
> Notary Public, State of Illinois
> My Commission Expires 04-22-2008

COUNTY OF ADAMS       )
                      )
STATE OF ILLINOIS     )

## AFFIDAVIT

I, JAMES A. CARLOCK, on oath state:

1.    I am the Defendant in **Gilmore et al. v. Carlock,** 06 cv 3010.

2.    To the best of my recollection, prior to being served with the Complaint, I had never met or talked to any of the Plaintiffs and I did not know who they are.

3.    On February 13, 2004 and July 12, 2004, I entered into Natural Gas Leases with Allied Energy, LLC., an Illinois Limited Liability Company.

4.    Both the February 13, 2004 and July 12, 2004 leases prohibit Allied Energy, LLC. from assigning its rights under the leases unless I give express written approval.  At no time have I given Allied Energy, LLC. written approval to assign its lease rights.


AFFIANT FURTHER SAYTH NOT

BY: _James A. Carlock._
      James A. Carlock

SUBSCRIBED and SWORN to before me
this 2o day of February, 2006.

_____
Notary Public

> OFFICIAL SEAL
> TERRENCE J ANASTAS
> NOTARY PUBLIC · STATE OF ILLINOIS
> MY COMMISSION EXPIRES: 04-07-07